NUMBER 13-08-00311-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


VANTAGE SYSTEMS DESIGN, INC., Appellant,


v.


RAYMONDVILLE INDEPENDENT SCHOOL DISTRICT, Appellee.

 


On appeal from the 197th District Court

of Willacy County, Texas.

 


 OPINION


Before Chief Justice Valdez and Justices Rodriguez and Benavides


 Opinion by Chief Justice Valdez (1)
 

 

 On appeal, appellant, Vantage Systems Design, Inc. ("Vantage") challenges the trial
court's dismissal of its breach of contract and quantum meruit suit against appellee,
Raymondville Independent School District ("the District"), for lack of jurisdiction. In a single
issue, advanced by four subissues, Vantage contends that the trial court erred in
dismissing its suit. We affirm.

I. Background

 On June 5, 2002, the District, the Willacy County Courthouse, Reber Memorial
Public Library, the City of Raymondville, Raymondville Su Clinica, and Workforce Solutions
entered into an interlocal collaborative agreement (2) whereby the entities agreed to apply for
a $203,000 grant from the Telecommunications Infrastructure Fund Board for the
installation of a wireless internet network in Willacy County. Under the terms of the
agreement, the District administered the grant and accepted bids from contractors.

 Vantage submitted a $144,168.50 bid and made a visual presentation to the
District's Board of Trustees at a board meeting. On March 31, 2003, Bernadette Cover,
the District's superintendent, wrote to Patrick Kennedy, Vantage's district sales manager,
that the District had accepted Vantage's bid. Cover's letter states in relevant part:

Please be advised that the RISD board unanimously approved the award of
the Raymondville CN-3 grant project to Vantage Systems at a Special
Meeting . . . .


 . . . 


Raymondville ISD, as grant administrator, is a tax exempt organization. 
Therefore, the district will require that all subcontractors and third party
vendors submit their invoices directly to, and for payment by the
Raymondville ISD. Invoices should not include any Sales Tax component.


Please prepare your time-line information and estimated payment schedule,
identifying such subcontracts and vendors.


Thereafter, Vantage sent a signed contract to the District, but the District never executed
the contract. Vantage began the project and received at least one payment from the
District on April 17, 2003.

 In July 2003, Cover e-mailed Vantage to express concerns over the quality of its
work and cost overruns. Vantage responded to Cover's concerns and reassured her that
the project would be properly completed. The District subsequently hired another
contractor to complete the project.

 On September 8, 2003, Vantage sued the District for breach of contract. The
District answered with a general denial, specifically denied executing a contract, and
asserted counterclaims for deceptive trade practice act violations, negligence, and
fraudulent inducement. In 2006, the District moved for a traditional summary judgment,
but the trial court denied its motion. The District filed a plea to the jurisdiction, which
asserted governmental immunity from suit, and a notice of nonsuit as to its counterclaims. 
Vantage did not respond to the District's jurisdictional plea. On April 30, 2008, the trial
court dismissed Vantage's suit. This appeal followed. II. Standard of Review A plea to the jurisdiction challenges the trial court's authority to determine the
subject matter of the action. Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex.
1999). Whether a trial court has subject-matter jurisdiction and whether a pleader has
alleged facts that affirmatively demonstrate the trial court's subject-matter jurisdiction are
questions of law that we review de novo. Tex. Dep't of Parks & Wildlife v. Miranda, 133
S.W.3d 217, 226 (Tex. 2004); Tex. Natural Res. Conservation Comm'n v. IT-Davy, 74
S.W.3d 849, 855 (Tex. 2002). The plaintiff has the burden to plead facts affirmatively
showing that the trial court has jurisdiction. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852
S.W.2d 440, 446 (Tex. 1993); Univ. of N. Tex. v. Harvey, 124 S.W.3d 216, 220 (Tex.
App.-Fort Worth 2003, pet. denied). 

 We construe the pleadings liberally in favor of the pleader, look to the pleader's
intent, and accept as true the factual allegations in the pleadings. See Miranda, 133
S.W.3d at 226, 228; City of Fort Worth v. Crockett, 142 S.W.3d 550, 552 (Tex. App.-Fort
Worth 2004, pet. denied). If a plea to the jurisdiction challenges the existence of
jurisdictional facts, we consider relevant evidence submitted by the parties when necessary
to resolve the jurisdictional issues raised, as the trial court is required to do. See Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000) (confining the evidentiary review
to evidence that is relevant to the jurisdictional issue). We take as true all evidence
favorable to the non-movant and indulge every reasonable inference and resolve any
doubts in the non-movant's favor. Miranda, 133 S.W.3d at 228. 

 If the evidence creates a fact question regarding the jurisdictional issue, then the
trial court cannot grant the plea to the jurisdiction, and the fact question will be resolved by
the factfinder. Id. at 227-28; Bland, 34 S.W.3d at 555. If the relevant evidence is
undisputed or fails to raise a fact question on the jurisdictional issue, however, the trial
court rules on the plea to the jurisdiction as a matter of law. Miranda, 133 S.W.3d at
227-28; Bland, 34 S.W.3d at 555.

III. Governmental Immunity

 Governmental immunity has two components: immunity from liability and immunity
from suit. Tooke v. City of Mexia, 197 S.W.3d 325, 332 (Tex. 2006). Immunity from suit
bars suit against the entity altogether. Id. When a governmental entity enters into a
contract, that entity waives immunity from liability and voluntarily binds itself, just as any
other party would, to the terms of the contract, but that entity does not thereby waive
immunity from suit. Id. For there to be a waiver of immunity from suit in the contract-claim
context, the legislature must have waived immunity from suit as to the claim in question by
clear and unambiguous language. See Tex. Gov't Code Ann. § 311.034 (Vernon Supp.
2008) (providing that a statute shall not be construed as a waiver of sovereign immunity
unless the waiver is effected by clear and unambiguous language); Tooke, 197 S.W.3d at
332-33 (requiring clear and unambiguous language to waive governmental immunity).

 Under Texas Local Government Code section 271.152, a local governmental entity
authorized by statute or constitution to enter into contract, and which enters into a contract
subject to the subchapter, waives sovereign immunity to suit for purpose of adjudicating
a claim for breach of the contract. Tex. Loc. Gov't Code Ann. § 271.152 (Vernon 2005).
A contract subject to the subchapter is "a written contract stating the essential terms of the
agreement for providing goods or services to the local governmental entity that is properly
executed on behalf of the local governmental entity." Id. § 271.151(2) (Vernon 2005).

IV. Discussion

A. Breach of Contract

 In its first subissue, Vantage argues that the trial court has jurisdiction over its claim
because section 271.152 of the local government code waives governmental immunity for
breach-of-contract claims and "at least some evidence exists" of a contract. In its first
amended original petition, Vantage pleaded in relevant part:

On March 27, 2003, Defendant, RISD, awarded to Plaintiff [Vantage] a
contract to complete the CN-3 Grant project for RISD. That contract called
for Plaintiff to complete the work necessary to create a community wireless
network for RISD and other entities. Plaintiff would show that Defendant
RISD breached without excuse its contract on or about August 29, 2003. 


In its plea to the jurisdiction, the District denied executing a contract with Vantage. 

 The record in this case lacks a written, executed contract between the parties. See
id. Vantage concedes this point, yet it contends that a contract, even in a governmental
immunity context, may consist of multiple documents. See Courage Co. v. Chemshare
Corp., 93 S.W.3d 323, 333 (Tex. App.-Houston [14th Dist.] 2002, no pet.) (citing Fort
Worth Indep. Sch. Dist. v. City of Fort Worth, 22 S.W.3d 831, 840 (Tex. 2000)) ("A court
may determine, as a matter of law, that multiple documents comprise a written contract,
and in appropriate instances, may construe all the documents as if they were part of a
single, unified instrument."). Vantage posits that there is some evidence of a contract
under the "multiple document standard" because it made a formal proposal to the District's
Board of Trustees and Cover acknowledged the District's acceptance of the proposal. 
Vantage essentially asks us to apply the common law of contracts to a governmental
immunity question just as the Texas Supreme Court did in 2000 in Fort Worth Indep. Sch.
Dist., 22 S.W.3d at 840. 

 Since that case, the Texas Legislature has enacted section 271.152 of the local
government code, which governs the underlying dispute, (3) and we defer to the legislature
to waive governmental immunity. See Tex. Gov't Code Ann. § 311.034; IT-Davy, 74
S.W.3d at 853. Section 271.151 clearly states that for a contract to waive governmental
immunity it must be written and properly executed. See Tex. Loc. Gov't Code Ann. §
271.151. Even though Vantage pleaded the existence of a contract, it has not marshaled
one, which in this situation is a key jurisdictional fact. 

 Vantage's first subissue is overruled.

B. Quantum Meruit

 By its second subissue, Vantage contends that section 271.152 of the local
government code extends a waiver of governmental immunity to its quantum meruit claim. 
The Houston First Court of Appeals has held that the waiver of governmental immunity in
section 271.152 does not extend to quantum meruit claims. See City of Houston v.
Swinerton Builders, Inc., 233 S.W.3d 4, 12 (Tex. App-Houston [1st Dist.] 2007, no pet.);
see also McMahon Contr., L.P. v. City of Carrollton, No. 05-07-01626-CV, 2009 Tex. App.
LEXIS 311, at *9 (Tex. App-Dallas Jan. 19, 2009, no pet. h.) (noting that the parties
agreed that section 271.152 does not waive immunity from suit for quantum meruit claims);
see also H & H Sand & Gravel, Inc. v. City of Corpus Christi, No. 13-06-00677-CV, 2007
Tex. App. LEXIS 8878, at *7 (Tex. App.-Corpus Christi Nov. 8, 2007, pet. denied) (memo.
op.) (holding that claims in equity, including waiver by acceptance of material and benefit
and detrimental reliance are not encompassed by section 271.152's limited waiver). 
Vantage concedes that the Swinerton case contradicts its position, but, without a
developed argument or rationale, it invites us to hold otherwise. We decline to do so.

 Vantage's second subissue is overruled. 

C. Waiver

 By its third subissue, Vantage argues that the District waived immunity by filing
counterclaims and, after engaging in the litigation process for several years, is now
precluded from regaining immunity. With regard to the District's first argument, the
supreme court has held that where a 

governmental entity has joined into the litigation process by asserting its own
affirmative claims for monetary relief, we see no ill befalling the governmental
entity or hampering of its governmental functions by allowing adverse parties
to assert, as an offset, claims germane to, connected with, and properly
defensive to those asserted by the governmental entity.


Reata Constr. Co. v. City of Dallas, 197 S.W.3d 371, 376-77 (Tex. 2006). The Dallas
Court of Appeals has held that a governmental entity may regain immunity by withdrawing
claims for affirmative relief. See City of Dallas v. Albert, 214 S.W.3d 631, 636 (Tex.
App.-Dallas 2006, pet. filed) (op. on reh'g) (holding that to the extent the City may have
waived immunity from suit by filing counterclaims, the City reinstated its immunity from suit
by dismissing its counterclaims). (4) In this case, the District filed a notice of nonsuit as to its
counterclaims. Assuming the District's counterclaims where "germane to, connected with,
and properly defensive to" Vantage's claims, the District regained its immunity by
withdrawing its counterclaims. See id.

 Vantage also argues that the District is precluded from regaining immunity because
it invoked the trial court's jurisdiction by asserting counterclaims, pursuing discovery for
years, and then unilaterally attempting to vitiate jurisdiction through nonsuit. Vantage
contends that Perry Homes v. Cull supports its waiver argument. 258 S.W.3d 580 (Tex.
2008). 

 We conclude that Vantage's reliance on Perry Homes is misplaced. The principle
issue in that case was whether the home-owning-plaintiffs in a construction defect case
against a contractor waived their right to arbitration by opposing arbitration, engaging in
discovery, and then insisting on arbitration on the eve of trial. See id. at 584-85. The
principle issue in this case is not a contractual right but a fundamental jurisdictional
concept--governmental immunity. And, it is well established that subject-matter
jurisdiction is authorized by constitution or statute, and it is not something the parties can
confer by consent or waiver or abrogate by agreement. Fernandez v. Frost Nat'l Bank, 267
S.W.3d 75, 81 (Tex. App.-Corpus Christ 2008, pet. filed) (citing Walls Reg'l Hosp. v.
Altaras, 903 S.W.2d 36, 40-41 (Tex. App.-Waco 1997, no writ)).

 Vantage's third subissue is overruled.

D. Effect of Nonsuit

 In what we construe as Vantage's fourth subissue, it argues that the District's
counterclaim is still effective because no order dismissing it has been entered, and even
if a dismissal order were signed, the withdrawn counterclaim serves as some evidence of
a written contract. But, as we have already held, the local government code's waiver of
governmental immunity requires a written contract, not some evidence of a written contract. 
With regard to the nonsuit, we conclude, under the instant circumstances, that it took effect
when it was filed. See Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon, 195
S.W.3d 98, 100 (Tex. 2006) ("While the date on which the trial court signs an order
dismissing the suit is the 'starting point for determining when a trial court's plenary power
expires,' a nonsuit is effective when it is filed.") (quoting In re Bennett, 960 S.W.2d 35, 38
(Tex. 1997)).

 Vantage's fourth subissue is overruled.

V. Conclusion

 The trial court's dismissal order is affirmed. 

 ____________________ ROGELIO VALDEZ

 Chief Justice 


Opinion delivered and filed

this the 9th day of April, 2009. 

 


1. On our own motion, we withdraw our previously issued memorandum opinion and judgment and
substitute this opinion in its place. 
2. See Tex. Gov't Code Ann.§ 791.011 (Vernon Supp. 2008) (providing that local governments may
contract with each other for the provision of governmental services).
3. Although the effective date of this statute was September 1, 2005, the statute also applies to claims
arising under a contract executed before the effective date if sovereign immunity has not been waived with
respect to the claim before the effective date. Act of May 23, 2005, 79th Leg., R.S., ch. 604, §§ 2-3, 2005 Tex.
Gen. Laws 1548, 1549. Because the contract was allegedly formed in March 2003, we analyze Vantage's
claim under section 271.152 of the local government code.
4. See also City of Dallas v. Martin, 214 S.W.3d 638, 643 (Tex. App.-Dallas 2006, pet. filed) (op. on
reh'g) (same holding).